JONES, JUDGE:
On May 26, 1971, at approximately 2:00 p.m., the claimant, Ola Marie Varner, was a passenger in a 1965 Ford Galaxie automobile driven by her husband, claimant Okla Olin Varner. They were traveling from their home in Tazewell, Virginia, to visit their daughter near Pocahontas, Virginia. Their route passed through West Virginia at an intersection near Bishop, West Virginia, they turned left off of West Virginia State Route No. 16 onto another West Virginia State Route in the direction of Pocahontas. At this point, the right lane was completely covered with water, the left lane was clear and the centerline was visible, but another car was approaching. One or more cars passed behind Mr. Varner on Route 16, but in no way interfered with the movement of his vehicle. The left lane being temporarily occupied, Mr. Varner continued on his way through the water at a speed estimated by him as 20 miles per hour. Then, according to the claimants’ testimony, the right front wheels of their car struck a hole, causing the car to stop abruptly, the motor stalled, and Mrs. Varner was thrown out of her seat and against the top of the car with such force that she suffered injuries to her head, neck, right arm, elbow and shoulder. Mr. Varner testified that he started the motor and attempted to drive forward out of the hole but was unable to, so he backed out and then drove on to their daughter’s home. Mrs. Varner was given a sedative and then taken to the Bluefield Sanitarium where she was a patient until May 29, 1971. The claim is for $15,000.00, including $481.82 medical expenses.
Photographs taken four days after the accident showed several rather large holes along the right edge of the highway, with the edge of the asphalt broken and jagged and the major portions of the holes *220 being in the highway berm. Mr. Varner described the hole he struck as “about three feet wide, two or three or four feet wide”, and although the hole was standing practically full of water when the picture was taken, he estimated the depth to be six inches. Judging from the picture, it appears that the hole is about four feet wide and perhaps six inches deep at the deepest point, with about one foot of the width extending into the surfaced portion of the highway. The deepest part of the hole appears to be in the berm.
It appears from the evidence that it had rained most of the month of May, and it had rained hard for two or three days before the accident. After coming through winter, spring thaws and rains, West Virginia’s asphalt highways, if not already repaired, undoubtedly showed the usual signs of deterioration, including chuck holes, broken edges and rutted, torn-up berms. Mr. Varner said he had seen quite a number of small chuck holes, both in Virginia and West Virginia, and “missed all I could but I had to hit some of them but they didn’t stall the car, didn’t stop it.” When he reached the intersection he saw the flooded area of the highway. Mr. Varner said the water was standing still, and there is no explanation by anyone as to why it was not draining off. There is no showing that the respondent knew or should have known that there was a clogged drain dr other defect causing the flooding of the highway. If the water had properly drained, the holes would have been visible (Mr. Varner testified that the visibility was good), and if they were plain to be seen, he could have and should have avoided them. But Mr. Varner could not see what was under the water. Instead of waiting for the approaching car to pass so he could have taken the clear lane around the water, he chose to challenge the flooded area and struck a hole at a speed sufficient for the impact to throw Mrs. Varner out of her seat and against the top of the car.
The consistent position of this Court since its creation in 1967 with respect to cases involving alleged highway defects is outlined in the opinion of Judge Petroplus in Parsons vs. State Road Commission, 8 Court of Claims 35, in part as follows:
“This Court has many times held that the State is not a guarantor of the safety of its travelers on its roads and bridges. The State is not an insurer and its duty to travelers is a qualified one, namely, reasonable care and diligence in the maintenance of a highway under all the circumstances. The case of *221 Adkins v. Sims, 130 W. Va. 645, 46 S. E. (2d) 81, decided in 1947, holds that the user of the highway travels at his own risk, and that the State does not and cannot assure him a safe journey. The maintenance of highways is a governmental function and funds available for road improvements are necessarily limited.”
There is no clear showing that the respondent was negligent in permitting the partial flooding of the highway; and the claimants, having chosen to proceed through the water, assumed certain risks. Under the circumstances, they should have proceeded in such a manner that injury would not result from a sudden encounter with an invisible obstacle or hole. Even driving near the centerline, which was visible, would have avoided striking the hole at the edge of the highway.
In our opinion, the claimants have not proved such a positive neglect of duty on the part of the respondent as would impose a moral obligation upon the State to pay the claimants’ damages; nor do we believe that the claimants were without fault. Accordingly, the Court is of opinion to and does hereby disallow this claim.
Claim disallowed.